UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CLINTON PARKER, individually and on behalf of all others similarly situated, | Civil Action No. 4:12-cv-0999 |
| Plaintiff, | Judge Melinda Harmon |
| v. | |
| HYPERDYNAMICS CORPORATION and RAY LEONARD, | |
| Defendants. | |
| DENNIS DALE GERAMI, individually and on behalf of all others similarly situated, | Civil Action No. 4:14-cv-0641 |
| Plaintiff, | Judge Ewing Werlein |
| v. | |
| HYPERDYNAMICS CORPORATION, RAY LEONARD, PAUL C. REINBOLT, and DAVID WESSON, | |
| Defendants. | |
| BENJAMIN STAHELIN, individually and on behalf of all others similarly situated, | Civil Action No. 4:14-cv-0649 |
| Plaintiff, | Judge Ewing Werlein |
| v. | |
| HYPERDYNAMICS CORPORATION, RAY LEONARD, PAUL C. REINBOLT, and DAVID WESSON, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S
SECOND MOTION FOR CONSOLIDATION OF RELATED CASES**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 4

ARGUMENT ............................................................................................................................ 6

I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED ........................................... 6

    A.  The Applicable Legal Standard ................................................................................. 6

    B.  The Application of the Applicable Legal Standard Supports Consolidation ....................... 9

      1.    Each of the Constituent Complaints that Comprise the
Related Actions Is Pending in this District ........................................................ 9

      2.    The Related Actions Involve the Exact Same Parties ........................................ 9

      3.    The Related Actions Involve Common Questions of Law and/or Fact ........................... 9

      4.    There Is No Risk of Prejudice if the Related Cases Are Consolidated ........................ 12

      5.    Consolidation Will Conserve Judicial Resources and
Reduce the Time and Cost of Trying the Cases Separately .......................................... 13

      6.    The Stage of the Related Actions is No Impediment to Consolidation ........................ 13

CONCLUSION ..................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Am. Bridge Mfg. Co. v. Walter Toebe Const. Co., POU, Inc.*,
   No. 08-14315, 2010 WL 3245292 (E.D. Mich. Aug. 17, 2010) ............................................. 13

*Cheney v. Cyberguard Corp.*,
   213 F.R.D. 484 (S.D. Fla. 2003) ........................................................................................... 14

*Clark v. PNC Bank, N.A.*,
   No. SA-13-CV-799-XR, 2013 WL 6668674 (W.D. Tex. Dec. 17, 2013) ................................. 8

*DAC Surgical Partners P.A. v. United Healthcare Servs. Inc.*,
   No. 4:11–CV–1355, 2013 WL 3229686 (S.D. Tex. June 24, 2013) ........................... 3, 6, 8, 14

*Frazier v. Garrison I.S.D.*,
   980 F.2d 1514 (5th Cir.1993) ............................................................................................. 6, 8

*Gabriel v. OneWest Bank FSB*,
   No. H-11-3356, 2012 WL 1158732 (S.D. Tex. Apr. 5, 2012) ............................................... 13

*Gate Guard Services L.P. v. Solis*,
   No. V-10-91, 2011 WL 2784447 (S.D. Tex. Jul. 12, 2011) ...................................................... 6

*Hargett, III v. Valley Federal Savings Bank*,
   60 F.3d 754 (11th Cir. 1995) ................................................................................................... 7

*In re Air Crash Disaster at Fla. Everglades on Dec. 29*,
   1972, 549 F.2d 1006 (5th Cir. 1977) ....................................................................................... 8

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
   No. H-01-3624, 2007 WL 446051 (S.D. Tex. Feb. 7, 2007) ................................................ 8, 9

*In re Facebook, Inc., IPO Sec. and Derivative Litig.*,
   288 F.R.D. 26 (S.D.N.Y. 2012) ............................................................................................... 7

*In re Microtune, Inc.*,
   No. 4:03CV409, 2004 WL 2357884 (E.D. Tex. May 17, 2004) ........................................... 13

*In re Star Gas Sec. Litig.*,
   No. 3:04CV1766 (JBA), 2005 WL 818617 (D. Conn. Apr. 8, 2005) .................................... 11

*In re Thornburg Mortg., Inc. Sec. Litig.*,
   629 F. Supp. 2d 1233 (D.N.M. 2009) .............................................................................. 11, 14

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) ............................................................................................... 7

*Mid–Continent Cas. Co. v. Daviz–Ruiz Corp.*,
   No. C-06-315, 2006 WL 2583451 (S.D. Tex. Sept. 7, 2006) ...................................................... 7

*Miller v. United States Postal Serv.*,
   729 F.2d 1033 (5th Cir. 1984) ................................................................................................. 7

*Mills v. Beech Aircraft Corp., Inc.*,
   886 F.2d 758 (5th Cir. 1989) ................................................................................................... 6

*O'Hare v. Vulcan Capital, L.L.C., No. SA-04-CA*,
   566-OG, 2007 WL 996437 (W.D. Tex. Feb. 20, 2007) ............................................................. 6

*St. Bernard General Hosp., Inc. v. Hospital Service Assoc. Of New Orleans, Inc.*,
   712 F.2d 978 (5th Cir. 1983) ................................................................................................... 8

## **Rules**

Federal Rule of Civil Procedure 42(a) ..................................................................................... passim

15 U.S.C. § 78u-4 ................................................................................................................... 11

Richard Cuneo ("Cuneo" or "Lead Plaintiff"), the Court-appointed lead plaintiff (ECF No. 51) in *Parker v. Hyperdynamics Corp. and Ray Leonard*, Case No. 4:12-cv-0999 ("*Parker*"), hereby moves, pursuant to Federal Rule of Civil Procedure 42(a) and Local Rules 7.6[1] and 5.2[2] of the Southern District of Texas, for entry of an order consolidating *Germani v Hyperdynamics Corp., et al.*, Case No. 4:14-cv-00641 ("*Germani*"), and *Stahelin v. Hyperdynamics Corp., et al.*, Case No. 4:14-cv-0649 ("*Stahelin*"), with *Parker*, the "oldest case," under the leadership structure ordered by the Court on December 5, 2013 (ECF No. 51).[3] In support of the motion, Lead Plaintiff states as follows:

## PRELIMINARY STATEMENT

Hypyerdnamics Corp. ("Hyperdynamics" or the "Company") is a small, independent oil and gas exploration company with prospects in offshore Republic of Guinea ("Guinea") in Northwest Africa (the "Concession"). On September 22, 2006, the Company entered into a production sharing contract with Guinea pursuant to which the Company was granted certain exclusive contractual rights by Guinea to explore and exploit the oil and gas reserves, if any, off the coast of Guinea (the "PSC"). On March 25, 2010, the Company and the government of Guinea amended the PSC, which clarified the parties' rights as set forth in a September 2009 memorandum of understanding.

---

[1] Local Rule 7.6 provides that "[a] motion to consolidate cases will…[c]ontain in the caption of the motion (1) The case numbers; (2) Full styles; and (3) Judge to whom each of the cases is assigned. B. Be filed only in the oldest case with a courtesy copy furnished to the other affected courts. C. Be heard by the judge to whom the oldest case is assigned. D. The term "oldest case," as used in this Rule, means the case filed first in any court, state or federal, including cases removed or transferred to this Court." Counsel for *Parker* Lead Plaintiff Richard Cuneo contacted Defendants, as well as plaintiffs in the *Gerami* and *Stahelin* actions, requesting their consent on this motion. Defendants and counsel for *Gerami* did not respond by filing time. Counsel for *Stahelin* did not consent.

[2] Local Rule 5.2 provides: "Related Litigation Policy. The parties must advise the Court of related current or recent litigation and of directly affected non-parties."

[3] The *Parker*, *Gerami*, and *Stahelin* actions are referred to as the "Related Actions."

As noted in the Company's SEC filings, Hyperdynamics' "rights to the Concession are set forth in the PSC." *See* Annual Report on Form 10-K for the fiscal year ended June 30, 2011, dated September 13, 2011 at 7. Among other things, to retain the Concession, the Company was required to drill its "first well no later than December 31, 2011, and to drill a minimum of one additional exploration well to a minimum depth of 2,500 meters below the seabed at a minimum cost of $15 million by September 21, 2016." *Id*. "The PSC has other work and additional obligations that" Hyperdynamics is required "to perform to maintain compliance with the PSC" and retain the Concession. *Id*. Failure to comply with the PSC could result in loss of the Concession. The importance of such an event would be devastating to the Company. The Concession is the Company's "single most important asset," and constitutes all of its "potential for the future generation of revenue." *Id*. at 9.

On September 30, 2013, Hyperdynamics disclosed that the Department of Justice (the "DOJ") served it with a subpoena in connection with obtaining and retaining the Concession. An additional disclosure that the SEC served the Company with a subpoena for the same reasons was made on February, 7, 2014. The *Germani* and *Stahelin* actions followed the February 2014 disclosure.

Each of the constituent actions that comprise the Related Actions alleges the foregoing facts as the underlying predicate for their allegations. Indeed, Lead Plaintiff has already filed an exhaustive amended consolidated complaint (the "Amended Complaint" or "AC") demonstrating that the facts alleged in the Related Actions are intimately linked. *See infra* at 4-6; 9-11. Even a cursory review of the complaints reveals that the Related Actions share substantially similar, if not the same, common issues of fact and law; namely, whether Defendants violated the Foreign Corrupt Practices Act of 1977 ("FCPA") and/or anti-money laundering statutes in connection

2

with obtaining and retaining the Concession (or in the Company's words, "maintain[ing] compliance with the PSC"). Hyperdynamics 2011 Form 10-K at 7. *DAC Surgical Partners P.A. v. United Healthcare Servs. Inc.*, No. 4:11–CV–1355, 2013 WL 3229686, at *3 (S.D. Tex. June 24, 2013) (Harmon, J.). *Compare* Amended Complaint in *Parker* (AC ¶¶ 1, 5, 7) *with Germani* ¶¶ 3, 26, 27 and *Stahelin* ¶¶ 3, 26, 27. Under Rule 42(a) of the Federal rules of Civil Procedure, consolidation is appropriate.

In addition to having common facts forming the underlying basis for the claims, the Related Actions all name the Company, its Chief Executive Officer, Ray Leonard ("Leonard"), former Chief Financial Officer, Paul Reinbolt ("Reinbolt"), and Chief Accounting Officer David Wesson, as defendants.[4] The Related Actions also seek the same relief from Defendants, namely damages in connection with the false and misleading statements about Defendants' conduct in obtaining and retaining the Concession (i.e., compliance with the FCPA and anti-money laundering statutes and satisfaction of obligations under the PSC).

Moreover, consolidation of the Related Actions will conserve judicial and party resources and prevent unnecessary confusion during pre-trial proceedings. Fact and expert discovery is expected to cover substantially similar, if not the same, ground, and many of the witnesses will be the same. And, Defendants are expected to mount the same, if not a substantially similar, defense to the FCPA-related allegations in the Related Actions.

As discussed below, the Court should consolidate the *Germani* and *Stahelin* actions with the *Parker* action without disturbing the leadership structure the Court has already put in place.

---

[4] These defendants are referred to collectively as "Defendants".

# FACTUAL BACKGROUND

On December 5, 2013, the Court appointed Cuneo as Lead Plaintiff, Bernstein Liebhard LLP as Lead Counsel, and The Bilek Law Firm, L.L.P. as Liaison Counsel of the *Parker* action. ECF No. 51. Cuneo's appointment followed the withdrawal of two previously appointed lead plaintiffs. *Id*.

As a general matter, the original complaint in the *Parker* action alleged "that "[d]uring the Class Period, defendants issued materially false and misleading statements regarding the Company's business and financial results." *Parker* at ¶ 3 (quoted in ECF No. 41).[5] Specifically, Parker alleged that Hyperdynamics and Leonard made materially false and misleading statements concerning the Company's activities in connection with the drilling of the Concession – i.e., the retention of the Concession. *Parker* ¶¶ 12, 51. Among other things, Parker identified limited port facilities as well as operational matters surrounding the drilling of the first well required under the PSC as reasons why the Company would be unable to commence drilling a second well. *Id*. Parker brought his action pursuant to the Securities Exchange Act of 1934 ("Exchange Act") on behalf of all persons who purchased or acquired Hyperdynamics' publicly-traded securities between and including February 17, 2011, and February 15, 2012. Parker named the Company and Leonard as defendants.

On September 30, 2013, Hyperdynamics received a subpoena from the DOJ requesting that the Company produce documents relating to its business in Guinea. In discussing the subpoena, the Company stated that it understood the DOJ to be "investigating whether Hyperdynamics' activities in obtaining and retaining the concession rights and its relationships with charitable organizations potentially violate the U.S. Foreign Corrupt Practices Act or U.S.

---

[5] The initial *Parker* complaint is cited as "*Parker* ¶_". The amended *Parker* complaint is cited as "Amended Complaint ¶_" or "AC ¶_".

anti-money laundering statutes." *See* Quarterly Report on Form 10-Q for the period ended September 30, 2013 at 16.

As noted, on December 5, 2013, the Court appointed Cuneo Lead Plaintiff in *Parker*. ECF No. 41.

On March 13, 2014, Dennis Dale Germani filed a complaint in this District pursuant to the Exchange Act, alleging, as a general matter, that "[t]hroughout the Class Period [November 8, 2012 and March 11, 2014], Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects." *Germani* ¶ 6. More specifically, the *Germani* complaint includes allegations that the defendants named therein violated the Exchange Act by making false and misleading statements about the Company's activities obtaining and retaining the Concession, namely, violating the FCPA and/or anti-money laundering statutes. Germani named as defendants Hyperdynamics, Leonard, Reinbolt, and Wesson.

The next day, on March 14, 2014, Benjamin Stahelin filed a copy-cat complaint in this District. In all material respects, the *Stahelin* complaint is the same as the *Germani* complaint.

On March 26, 2014, the Court entered a scheduling order directing Lead Plaintiff to file "an amended consolidated complaint" on May 12, 2014 (the "Scheduling Order"). ECF No. 55. Pursuant to the Scheduling Order, on May 12, 2014, Cuneo filed the Amended Complaint. Defendants have until July 11, 2014 to respond to the Amended Complaint.

As a general matter, the Amended Complaint alleges that Defendants made false and/or misleading statements about the Company's business, operations and financial condition. More specifically, the Amended Complaint contains, *inter alia*, allegations that Defendants made false and misleading statements about their activities in obtaining and retaining the Concession. The

5

conduct underlying the FCPA-related allegations includes, alleged bribery and attempted bribery, as reflected in cables sent from the U.S. Embassy in Guinea, the alleged use of a charitable organization, the American Friends of Guinea ("AFG"), in obtaining and retaining the Concession, and alleged bribery and attempted bribery in the retention of the PSC – including during drilling operations. AC ¶¶ 52, 81, 82, 89, 91, 92, 95, 96-99, 101-03, 106, 110-12, 131, 133, 134, 164. Lead Plaintiff names as defendants, the Company, Leonard, Reinbolt and Wesson. Lead Plaintiff alleges that Defendants violated the Exchange Act during the period of September 29, 2009, through March 11, 2014, inclusive, a period that includes the artificially constructed class period set forth in the *Germani* and *Stahelin* complaints.

As discussed below, the Related Actions involve common questions of law and fact, and arise from, and seek relief under, the federal securities laws. Under these circumstances, the Court should consolidate the *Germani* and *Stahelin* actions with *Parker*.

## ARGUMENT

### I. THE RELATED ACTIONS SHOULD BE CONSOLIDATED

#### A. The Applicable Legal Standard

Rule 42(a) allows a court, among other things, to consolidate two or more actions that "involve a common question of law or fact . . . ." Fed. R. Civ. P. 42(a). The trial court has broad "discretionary authority to consolidate cases" when the actions involve common facts or law and conserve the resources of the court and the parties. *DAC Surgical Partners P.A.*, 2013 WL 3229686, at *2; *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1531 (5th Cir. 1993); *Mills v. Beech Aircraft Corp., Inc.*, 886 F.2d 758, 761-62 (5th Cir. 1989) (district court has broad discretion to determine whether the actions involve common questions of law and fact and whether consolidation would serve judicial economy and save the parties time and money).

"District courts routinely consolidate cases before them that substantially overlap." *Gate*

*Guard Services L.P. v. Solis*, No. V-10-91, 2011 WL 2784447, at *14 (S.D. Tex. Jul. 12, 2011) (citing *O'Hare v. Vulcan Capital, L.L.C.*, No. SA-04-CA-566-OG, 2007 WL 996437, at *3 (W.D. Tex. Feb. 20, 2007) (consolidating second-filed action with first-filed action after applying the first-to-file rule where "the core issues in the two cases . . . substantially overlap[ped] ... [and] the two law suits ar[o]se out of the same subject matter, transactions, and issue")); *Mid–Continent Cas. Co. v. Daviz–Ruiz Corp.*, No. C-06-315, 2006 WL 2583451, at *1 (S.D. Tex. Sept. 7, 2006) (sua sponte consolidating first-filed breach of contract action with second-filed action seeking declaratory judgment that insurer was not obligated to pay insured under terms of contract because the two actions involved "identical parties and common questions of law and fact"); *see also Hargett, III v. Valley Federal Savings Bank*, 60 F.3d 754, 765-66 (11th Cir. 1995) ("'[t]he proper solution to problems created by the existence of two or more cases involving the same parties and issues, simultaneously pending in the same court would be to consolidate them under Rule 42(a)'"), quoting *Miller v. United States Postal Serv.*, 729 F.2d 1033, 1036 (5th Cir. 1984). In fact, consolidation is appropriate "even in cases where there are 'differences in causes of action, defendants, or the class period,' as long as there are common questions of fact and law." *In re Facebook, Inc., IPO Sec. and Derivative Litig.*, 288 F.R.D. 26, 36 (S.D.N.Y. 2012).

The court in *Facebook* succinctly described why consolidation is warranted even when related actions contain some differences in allegations:

> Both claims involve putative class actions that seek relief on behalf of similar classes, asserted against some of the same defendants, arising out of the same series of events, and assert claims under federal securities laws. To reject consolidation, would unnecessarily create two distinct and parallel securities litigation cases with different plaintiffs and different leadership.

*Id.* at *35-36. *See also Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("[d]ifferences in

causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation").

Finally, the Fifth Circuit has urged district judges "'to make good use of Rule 42(a) in order to expedite ... trial and eliminate unnecessary repetition and confusion' – even when opposed by the parties." *DAC Surgical Partners*, 2013 WL 3229686, at *2 (quoting *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1013 (5th Cir. 1977)). This direction is consistent with the purpose of consolidation, which is to "avoid unnecessary costs or delay." Rule 42(a).

In considering whether consolidation is appropriate, courts consider the following factors, among others: (1) whether the actions are pending before the same court, (2) whether common parties are involved in the cases, (3) whether there are common questions of law and/or fact, (4) whether there is risk of prejudice or confusion if the cases are consolidated, and if so, is the risk outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately, and (5) whether consolidation will conserve judicial resources and reduce the time and cost of trying the cases separately. *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. H-01-3624, 2007 WL 446051, at *1 (S.D. Tex. Feb. 7, 2007) (Harmon. J.) (citing *Frazier v. Garrison*, 980 F.2d at 1531-32). *See also Clark v. PNC Bank, N.A.*, No. SA-13-CV-799-XR, 2013 WL 6668674 (W.D. Tex. Dec. 17, 2013). A further consideration is whether the cases are at the same stage of preparation for trial. *Enron*, 2007 WL 446051, at *1 (citing *St. Bernard General Hosp., Inc. v. Hospital Service Assoc. Of New Orleans, Inc*., 712 F.2d 978, 990 (5th Cir. 1983)). As discussed, below, each of the foregoing factors militates in favor of consolidation.

B.   **The Application of the Applicable Legal Standard Supports Consolidation**

1.   **Each of the Constituent Complaints that Comprise the Related Actions Is Pending in this District**

The Related Actions are pending in this District, in the Houston Division.  Thus, this factor supports consolidation.  *See Enron*, 2007 WL 446051, at *1.

2.   **The Related Actions Involve the Exact Same Parties**

The Related Actions name as defendants Hyperdynamics, Leonard, Reinbolt, and Wesson.  Since the claims in the Related Actions are brought as class actions under the Exchange Act, the fact that the plaintiffs in the constituent actions are not the same is of no moment.  Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Court is required to appoint a lead plaintiff for the class.  *See* 15 U.S.C. § 78u-4.  On December 5, 2013, this Court appointed Cuneo.  ECF. No. 51.  As the Court-appointed Lead Plaintiff, Cuneo is asserting claims on behalf of all persons similarly situated.  These claims include the alleged violations by Hyperdynamics of the FCPA during a class period that includes the class periods in *Germani* and *Stahelin*.[6]  Accordingly, the identity of the plaintiffs has no bearing on whether the Related Actions should be consolidated.  Thus, this factor also supports consolidation.

3.   **The Related Actions Involve Common Questions of Law and/or Fact**

The Related Actions are all linked to conduct taken in connection with the Concession like spokes to a hub.  The Amended Complaint demonstrates that the allegations relating to misstatements and omissions about FCPA compliance and the allegations relating to misstatements and omissions about the Company's drilling activities are all part of a common set

---

[6] On January 31, 2014, the Court denied the motion for a status conference by Fiona Hansen, who was seeking appointment as lead plaintiff, as moot.  ECF No. 53.  Hansen's motion was filed on December 13, 2013 (ECF No. 50), eight days after the Court appointed Cuneo and more than two and one-half months after the Company disclosed that the DOJ had served a subpoena on Hyperdynamics in connection with the Defendants' conduct in obtaining and retaining the Concession.

of facts relating to the Concession – i.e., the obtaining and retaining of the Concession. The *Gerami* and *Stahelin* complaints also identify misstatements and omissions about the Company's drilling activities to be part of the facts relating to the retention of the Concession. *See Gerami* ¶ 26 ("[t]he PSC Amendment required the drilling of an exploration well, which had to be commenced by year-end 2011, and drilled to a minimum depth of 2,500 meters below seabed. This requirement was satisfied with the drilling of the Sabu-1 well which was commenced during October of 2011…"). *See also Stahelin* ¶ 26.

The artificial class period designated in the *Germani* and *Stahelin* complaints does not negate or diminish the commonality of fact or law. The plaintiffs in those actions obviously began their class periods on November 8, 2012, because the class period alleged in the original *Parker* complaint ended in February 2012. *See Parker* ¶1. As noted, Hyperdynamics obtained the rights to the Concession in September 2006, as amended in March 2010. Drilling activities required to comply with the PSC began soon thereafter. Notwithstanding, Germani and Stahelin started their class period in November 2012, well after the Company obtained its rights to the Concession. In their complaints, neither Gerami nor Stahelin articulate a reason for beginning their class period in November 2012. The *Gerami* and *Stahelin* plaintiffs' artificial class period construct is without basis and otherwise unpersuasive and should not succeed in defeating consolidation.[7]

---

[7] The *Gerami* and *Stahelin* complaints fail to allege what portions of Defendants' statements were misleading or why. Indeed, these complaints allege that a wide array of statements – concerning financial data such as loss per share (*Gerami* ¶¶ 19, 21, 23, 25, 29, 32; *Stahelin* ¶¶ 19, 21, 23, 25, 29, 32); the percentage of the concession owned by Hyperdynamics (*Gerami* ¶¶ 22, 24, 30; *Stahelin* ¶¶ 22, 24, 30); and drilling at Sabu (*Gerami* ¶ 26; *Stahelin* ¶ 26) – are misleading because of the announcement of the government investigations into possible FCPA violations. *See Gerami* ¶ 34; *Stahelin* ¶ 34. The *Gerami* and *Stahelin* plaintiffs do not explain, however, *how* these statements were rendered misleading by a failure to disclose FCPA violations. In contrast, the Amended Complaint alleges at great length *why* Defendants' statements relating to obtaining and retaining the Concession were false and misleading. *See* AC ¶¶ 52, 81, 82, 89, 91, 92, 95, 96-99, 101-03, 106, 110-12, 131, 133, 134, 164.

By contrast, Lead Plaintiff begins the class period with the earliest statement about the Company's conduct in obtaining and retaining the Concession that falls within the statute of limitations and continues through the end of the class period in *Germani* and *Stahelin*. AC ¶ 246.[8]

Finally, the Related Actions share the following common questions of fact and law, among others:

- Did the Company and its officers and/or directors violate the FCPA or other U.S. anti-money laundering statutes when the Concession was obtained?

- Did Defendants violate the FCPA or other statutes in retaining the Concession?

- Did the fact that corruption is a part of doing business in Guinea play a role in obtaining and retaining the Concession?

- Did Defendants make materially false and misleading statements relating to Defendants' conduct in obtaining and retaining the Concession?

- Did Defendants make the statements concerning conduct in obtaining and retaining the Concession knowingly or with recklessness?

- Did the disclosure of the DOJ and SEC investigations of the Company's compliance with the FCPA and other U.S. money laundering statutes in obtaining and retaining the Concession cause members of the putative class damages?

- What is the amount of damages attributable to Defendants' conduct in obtaining and retaining the Concession as it pertains to compliance with the FCPA?

In light of the common questions of law and fact in the Related Actions, consolidation is appropriate and warranted.

---

[8] Courts routinely recognize the right of a lead plaintiff to expand the class period where the claims are "sufficiently related" to the earlier claims. *See, e.g.*, *In re Thornburg Mortg., Inc. Sec. Litig.*, 629 F. Supp. 2d 1233, 1239 (D.N.M. 2009) (finding that "the new claims and Defendants added in the Consolidated Complaint are sufficiently related to the earlier claims…."); *In re Star Gas Sec. Litig.*, No. 3:04CV1766 (JBA), 2005 WL 818617, at *7 (D. Conn. Apr. 8, 2005) (lead plaintiffs have discretion to dictate scope of case through subsequent filing of amended complaint).

### 4. There Is No Risk of Prejudice if the Related Cases Are Consolidated

There is little risk of prejudice or confusion if the Related Actions are consolidated. As directed by the Court in the Scheduling Order, Lead Plaintiff has filed the Amended Complaint. Defendants are required to file a response by July 11, 2014. Motions under the PSLRA to consolidate and appoint a lead plaintiff in the *Germani* and *Stahelin* actions are being filed today.

The Exchange Act claims alleged in *Germani* and *Stahelin* arise from conduct taken by Defendants in obtaining and retaining the Concession. *Germani* ¶¶ 3, 6; *Stahelin* ¶¶ 3, 6. Public disclosure of the DOJ investigation of that conduct was made by the Company on September 30, 2013. *Germani* ¶ 27, *Stahelin* ¶ 27. Neither Germani, Stahelin, nor any of today's lead plaintiff movants, filed a complaint against any of the Defendants containing allegations about their compliance with the FCPA following that disclsoure. Instead, Germani and Stahelin waited until after the February 7, 2014 disclosure that the SEC was opening an investigation into Defendants' conduct in obtaining and retaining the Concession.

By contrast, Cuneo, who was appointed Lead Plaintiff in *Parker* on December 5, 2013, included detailed allegations concerning Defendants' conduct in obtaining and retaining the Concession – the very issues that are the subject of the DOJ and SEC investigations – in the Amended Complaint. *See infra* at 10 n.7. Given the public disclosure of the DOJ investigation in September 2013, it is difficult to see how Germani, Stahelin, and/or any of today's lead plaintiff movants are prejudiced by consolidation and maintenance of the Court-appointed leadership structure in *Parker*.

More importantly, the risk, if any, of prejudice to Germani, Stahelin, and/or any of today's lead plaintiff movants is substantially outweighed by the risk of inconsistent adjudications of the factual and legal issues between the Related Actions. The risk of inconsistent adjudication with respect to these issues – which are present in all cases – weighs in

favor of consolidation. *See Am. Bridge Mfg. Co. v. Walter Toebe Const. Co., POU, Inc.*, No. 08-14315, 2010 WL 3245292, at *1 (E.D. Mich. Aug. 17, 2010) (granting consolidation where the "actions before the court involve[d] a common question of law or fact" in that plaintiff's lawsuits both involved a central issue that, when resolved, would determine defendant's liability and noting that "consolidating the actions will . . . reduce the risk of inconsistent adjudication of this common factual and legal issue.").

### 5. Consolidation Will Conserve Judicial Resources and Reduce the Time and Cost of Trying the Cases Separately

When cases "have common issues of law and fact, there is no risk of confusion, and consolidation will conserve judicial resources and reduce the time and cost of handling the cases separately[,]" consolidation is appropriate. *Gabriel v. OneWest Bank FSB*, No. H-11-3356, 2012 WL 1158732, at *1 (S.D. Tex. Apr. 5, 2012). That is precisely the case here. Indeed, to require the parties to litigate separately the Related Actions with substantially similar, if not the same, FCPA-related issues will result in a significant duplication of effort and waste of resources by the Court and parties because the evidence, discovery, and witnesses will be substantially similar, if not the same, in all actions. Thus, consolidating the Related Actions is appropriate.

### 6. The Stage of the Related Actions is No Impediment to Consolidation

Prejudice is an issue when cases are at different procedural stages and consolidation will prejudice a party in the case at the more advanced stage. *See*, *e.g.*, *In re Microtune, Inc.*, No. 4:03CV409, 2004 WL 2357884, at *1 (E.D. Tex. May 17, 2004) (denying consolidation where plaintiffs would be "prejudice[d]…by unnecessarily delaying discovery"). Here, the Related Actions are all at an early stage. If anything, the *Parker* action is procedurally ahead of the *Germani* and *Stahelin* actions. In *Parker*, the Amended Complaint was filed on May 12, 2014. In *Gerami* and *Stahelin*, the complaints were filed in March of 2014, and the PSLRA-

13

required consolidation and lead plaintiff proceedings – which are unnecessary and will result in duplicative proceedings – are just beginning.[9]  Accordingly, this factor also supports consolidation.  *DAC Surgical Partners*, 2013 WL 3229686, at *3 (finding no prejudice to consolidating later-filed case with the first-filed action that was at a different stage of preparedness than the later-filed one).

## CONCLUSION

For all these reasons, Lead Plaintiff Richard Cuneo respectfully requests that the Court consolidate the Related Actions under the *Parker* caption and leave undisturbed the leadership structure the Court determined to be appropriate in December 2013.

DATED:  May 12, 2014.

> Respectfully submitted,
>
>     */s/ Thomas E. Bilek*
> Thomas E. Bilek
> TX Bar No. 02313525 / SDTX Bar No. 9338
> **THE BILEK LAW FIRM, L.L.P.**
> 700 Louisiana, Suite 3950
> Houston, TX  77002
> (713) 227-7720
> FAX (713) 227-9404
>
> *Liaison Counsel for Lead Plaintiff Richard Cuneo and the Proposed Class*

---

[9] Consolidation of the Related Actions eliminates the need for those proceedings as Cuneo is already the Court-appointed Lead Plaintiff for claims arising from the same nucleus of facts common to all actions. *E.g.*, *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 503 (S.D. Fla. 2003); *In re Thornburg*, 629 F. Supp. 2d at 1241.

Jeffrey M. Haber
Joseph R. Seidman, Jr.
**BERNSTEIN LIEBHARD LLP**
10 East 40th Street, 22nd Floor
New York, NY 10016
(212) 779-1414
(212) 779-3218 (facsimile)

*Counsel for Lead Plaintiff Richard Cuneo and the Proposed Class*

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed via the Live District CM/ECF System on May 12, 2014, which caused an electronic copy of same to be served automatically upon all counsel of record.

       */s/ Thomas E. Bilek*
Thomas E. Bilek